and be participating in the decision in this case. So if councils would please identify yourselves for the record and also what party you're representing. Good afternoon, your honors. My name is Kathy Flynn. I'm from the Office of the State Appellate Defender, and I'm arguing today for Demian Cole. Thank you. Good afternoon. Janet Mahoney on behalf of the people of the state of Illinois. Okay, so 15 minutes a piece. Appellant, you want to reserve some time for rebuttal? Sure. I'd like to reserve two minutes. Two minutes? Okay. All right. With that, you may proceed. Good afternoon. As I stated just now, my name is Kathy Flynn, and I'm from the Office of the State Appellate Defender. Demian Cole was found guilty by accountability of the kidnapping and murder of Daryl Green, which occurred when Demian was 16. The crimes were planned and directed by Demian's 32-year-old father figure, a man named Kevin Mitchell. Demian was sentenced to 28 years imprisonment, a sentence that we now contend was excessive. Although the trial court here acknowledged Demian's age and tragic upbringing and Mitchell's malign influence, the trial court repeatedly stressed the seriousness of the crime and declined to impose the minimum of 20, quote, based upon the type of crime that was committed and Demian's involvement in it. As I will explain, this was an abuse of discretion and a misapplication of the teachings of Miller. As a threshold matter, I'd just like to address what the actual sentencing range was here. The state does suggest in its brief that Demian was eligible for an extended term sentence of up to 120 years. However, that was not the understanding of the parties at sentencing. Demian was acknowledged several times prior to trial that the max was 60. The state never argued for an extended term or presented any evidence going to the cold, calculated, aggravating factor that is present in count 12 and 13 of the indictment. And most importantly, the judge entered judgment on count one, which does not carry an extended term, and stated on the record that the max was 60. So I just wanted to clear that up. And in addition, under buffer, which this court granted me leave to file, we now know that the maximum sentence which may be imposed for a crime committed by a juvenile, absent a finding of incorrigibility, is 40 years. So with that in mind, and also keeping in mind the evolving nature of juvenile sentencing law, which has even come a long way since Demian was sentenced in 2016, this 28-year sentence that he received is really more of a mid-range sentence. The minimum is a hefty 20 years. I'll interrupt you for one second. So we're all agreed here that he didn't receive 40 years, correct? He did not. Okay. He did not. However, the minimum here was a hefty 20 years, which he had to serve at 100% because truth in sentencing law. The statutory minimum, which we contend was appropriate here, can often be adequate to provide adequate retribution. This is particularly so when we're talking about a juvenile. Now, the trial court here did acknowledge Kevin Mitchell's negative influence on Demian, 16-year-old Demian, and said he was mindful of Demian's troubled upbringing. However, he also repeatedly referred to the crime as serious, a situation involving, or hideous, actually, a situation involving a very serious crime and declined to impose the minimum based on the type of crime that was committed. Now, the state cites a litany of familiar cases, all of which hold essentially that this court is not in a position to reweigh the sentencing factors and substitute its judgment for the sentencing court. However, this court's role is also not to rubber stamp the sentencing decision. And I would suggest that the traditional emphasis on the seriousness of the offense as a legitimate sentencing factor has been somewhat undermined by the Miller line of cases, which hold that children are constitutionally different from adults for the purposes of sentencing. They're immature, vulnerable to negative influences, and cannot extricate themselves in crime-producing settings, all of which is certainly present here. This is not to say the seriousness of the offense is not an appropriate factor, even in a juvenile context. The element of the Constitution requires that it be considered. However, it takes on less significance where a juvenile is involved. Now, one of the most fundamental aspects of the Miller line of cases insists that juvenile sentencing considerations apply even to those children who commit terrible crimes. The distinctive attributes of youth diminish the penological justification. The seriousness of the offense in the adult context is a significant and proper factor because the state wishes to get retribution for a very serious crime. And there's also the element of deterrence that a serious sentence achieves. However, as the Supreme Court has recognized, those factors are greatly reduced in the juvenile context. In fact, they even stated that the case for retribution is not as strong for juveniles, and deterrence, well, as the Miller line of cases acknowledges, juveniles have undeveloped brains, and the deterrence factor doesn't really work. So when you look at Miller, Grover, Graham, those cases are all about the characteristics of the offender. And not necessarily the seriousness of the offense. Now, the trial court's remarks at sentencing emphasizing the hideous, very serious crime for which Demian was nearly found accountable, overemphasized the significance of the seriousness of the offense. And the rest of the factors codified in the juvenile sentencing statute, which was applicable to the sentencing hearing, generally cut Demian's way. Age, level of maturity. He was 16. He had attended perhaps one month of high school. He was running the streets wild because his biological father died when he was five. His mother and stepfather were in and out of prison and were addicted to drugs. Which leads to the next factor, outside pressure and negative influences. The trial court specifically acknowledged that 32-year-old Kevin Mitchell was the reason that Demian was involved in this crime. He planned it. They were constant companions. And as I mentioned before, Mitchell was a father figure to 16-year-old Demian. Demian even referred to him as dad. That was not the only malign adult influence in this crime. The other two co-defendants were 32-year-old Raymond Winters and 25-year-old Menard McAfee. So Demian, 16-year-old Demian here, was surrounded by criminal adults. History of parental neglect, as I alluded to briefly, it really doesn't get much worse. Dead father, drug-addicted mother, and stepfather. He was turned over to an uncle after his mother went to prison, who sexually abused him. He was left to fend for himself. Potential for rehabilitation, we do have some evidence here of that because of a somewhat unusual case. Demian was arrested about 13 years after this crime occurred. So in the meantime, he maintained a stable relationship with his longtime girlfriend. He had a child with her and was parenting her three children as well. He also was employed intermittently at UIC, I believe doing some kind of maintenance job. Perhaps most significantly, the circumstances of the offense and the level of planning, that's another factor that's under the Sentencing Statute. As the trial court acknowledged, Mitchell was the person who planned this offense. This was his show. And the reason that Demian became involved in the crime. He never planned it, and his participation of the four who did it was absolutely the most minimal. In fact, he basically followed Mitchell's directions every turn, except when the four reached Gary, Indiana, and Mitchell told Demian to pull the trigger and shoot the victim. Demian chickened out, in the words of my witness. He simply could not do it. So Demian Cole should have received a minimum sentence. The then 16-year-old's level of participation rehabilitated potential tragic upbringing. And most importantly, the key role played by the criminal adults in his life warranted more serious consideration. In addition, the trial court's repeated emphasis on the seriousness of the offense overlooked Demian's considerable potential for reform, as is required by Miller. And he asked that this court reduce his sentence. Thank you. All right. Before we proceed with the appellee's argument, Ms. Spirk, do you have any questions? No, thank you. I have a couple questions. So you mentioned that the trial court did consider everything in aggravation and mitigation, and I think the record's pretty clear on that in terms of the trial court considering everything in mitigation before the sentencing. So what you're really asking us to do is to re-weigh the factors that were provided in mitigation at the trial level. I'm asking you to re-weigh them in the light of Miller, which, to my mind, de-emphasizes the seriousness of the offense. Other than Miller, do you have any other authority that provides this court with the opportunity or authority to re-weigh the factors? I would just encourage this court to look to the recent trends in juvenile sentencing and the United States Supreme Court's proclamations on a new focus on individual characteristics of an offender as opposed to the seriousness of an offense. I do not have a specific case on that. Okay, and then I have one question regarding People v. Brown, which is a case that I think you cited in your argument, in your brief. That case is factually distinguishable from this case because in that case, there was a different charge in terms of aggravated battery. And then also, the trial court, it was asserted in the case, was kind of weighing at sentencing at trial level speculative evidence, whether or not the gun jammed or if it didn't jam, could there have been other fatalities or injuries as a result of the defendant's action. So how does that case is applicable to this case? Well, of course, we're not asserting that the trial court necessarily got anything wrong. He didn't misapprehend the facts of the case. He did get everything right. So it's distinguishable. Brown is distinguishable in that regard. But I think Brown has just decided to show that this court certainly has the power, which it should apply to reduce the sentence, where it feels that the sentence imposed upon someone who was a juvenile at the time of the crime does not comport with this rehabilitative potential. That's really what the case is about. Okay, right. Thank you. All right. Eppley? Good afternoon again. Janet Mahoney on behalf of the people. The trial court in this case didn't do anything wrong at sentencing. The only problem here is the defendant doesn't like how the trial court sentenced him. He's not only asking this court to reweigh the factors but to completely ignore the comprehensive sentencing hearing that was conducted below. Defendant's excessive sentence claim is founded on Miller principles. But Miller principles do not apply because defendant did not receive a de facto life sentence. The only real consideration is whether the trial court abused its discretion when it found the case did not warrant a minimum sentence and sentence defendant to 28 years. Now, keep in mind that the finding of cult, calculated, and premeditated, counsel's absolutely correct. That wasn't on the table, and it wasn't on the table because defendant was 16 when he committed this crime. It's mentioned simply to highlight how aware everyone was that the defendant was a 16-year-old in this case. So why did the court impose a 28-year sentence? The seriousness of the crime, which is still the most important factor. There isn't a single case out there that says that it's diminished after Miller. There isn't a single suggestion that says it's not important at all or less important than perhaps the defendant's juvenile brain. It's still the most important factor because of the seriousness of the event and the danger that the defendant was to the community at large. What did he do here? He committed an aggravated kidnapping for ransom that ended in a murder when he and his co-defendants did not get that ransom money. The fear experienced by Darwin, the brother of the victim, when he was told, we have your brother. The fear he experienced when he was told when he could not get the ransom money, prepare for your brother's funeral. The torture that Darwin had with that. The fear experienced by Darrell as he was moved from his store to a basement and then from the basement to a wooded lot in Indiana as he begged for his life. The knowledge that Darrell had over the course of hours that his brother would not be able to pay a ransom, as well as the fact that the offenders could have let Darrell go when they could not secure the ransom. These are some of the reasons why the court concluded that this was not a minimum sentence case. But this is not all that the court considered. The court also considered that the defendant was a willing and involved participant in the planning of the crime. He was with the group when they drove past the cell phone store four to five times in preparation of the kidnapping. He also came prepared when the plan was executed. He came armed with the gun, the very gun that was used to shoot Darrell. The very gun that he retook possession of after Mitchell shot Darrell and hit it. The very gun that he gave to Winters and McAfee when his co-defendant Mitchell told him to get rid of it. But most importantly, we need to look at the most important thing that the court considered here. And that was the mitigation report that was prepared here, which was unusual for a 2016 case, which incorporated everything that every case is talking about with juvenile sentencing here. The court had ordered psychological testing of the defendant, and that was in the report. The report also included an extended account of defendant's social history, a detailed summary of his family life, his family members. The severe disruption in his childhood due to the abandonment of his parents, and also provided information about the sex abuse he incurred at the age of 14. The mitigation report noted that Mitchell was a father figure for defendant due to the absence of his own parents, and the defendant was involved in the crime because of Mitchell. The mitigation report was ahead of its game because it also talked about Roper, Graham, and Miller, and discussed about the brain science and how it demonstrated the defendant's adolescent brain was structurally and functionally different than the adult brain. The mitigation report stated that the stage of defendant's brain development impacted and resulted in impulsive, irresponsible, insensitive, impetuous, and seemingly thoughtless behaviors. And with all of that information, before sentencing the defendant, the court specifically acknowledged that Mitchell was a father figure with a strong personality who was the leader of the criminal events. The court stated that it could see why a young person like defendant would look upon Mitchell as a father figure, and how that is what happened to defendant. The court specifically stated that it was mindful it needed to, and was considering defendant was 16 at the time of the crime, and was considering the Miller principles and the changes to the sentencing guidelines after Miller. Knowing all of this, and knowing that the people had offered defendant a 20-year sentence in exchange for a plea, the court stated that the sentence should be more than the minimum. That's when the court imposed a 28-year sentence and stated the sentence reflected the seriousness of the offense, while taking into consideration defendant's age, family situation, and even stated the sentence provided defendant with the opportunity to lead a productive life upon release. We must also address this buffer consideration. Counsel's arguing that after buffer, the maximum sentence the defendant in this case could have received was 40 because there was no finding of incorrigibility. The sentencing parameters at the beginning of the sentencing hearing was the same before buffer, and that was 20 to 60 because the buffer court stated the nature, character, and extent of the penalties for a particular criminal offense are matters for the legislature. He faced 20 to 60. The court is not required to enter a finding of incorrigibility for it and poses a sentence so that the court may recalculate the sentencing parameters. Buffer does not support this conclusion, nor is there a single case or statute that finds this. Regardless, whether the sentencing parameters were 20 to 60 or 20 to 40, defendant's sentence is still within that sentencing parameter and is presumed proper. Every factor defendant is now asking this court to consider and reweigh was before the court at sentencing and at the comprehensive motion to reconsider that sentence, which should not be ignored in this case, either. This court should reject defendant's request for this court to re-sentence him and affirm the sentence. Thank you. Any questions, Justice Burke? No, thank you. Just one quick question. People v. Brown is cited as authority for this court to be able to reweigh the mitigation factors by the appellate. What is your understanding of that? The law in Illinois has been long and loud that the appellate court should not reweigh the sentencing factors simply because the defendant is unhappy with the way that the trial court weighed those. Everything that the defendant is asking this court to do, every single factor, was before the trial court, including that mitigation report that was forward thinking and had every Miller factor discussed in it, as well as discussion about the influence of the adult codependent on the defendant. The court knew about the offer of the 20 years from the state, and the court said, this is not a minimum sentence case, and it wasn't. The sentence here was proper. Thank you. Pellant? Buddle? Just very briefly. The state comments that Illinois law on sentencing in terms of this court's inability to reweigh factors is long and loud. However, I'd also add that it was also long and loud for many years that juveniles could properly receive sentences of life without parole. Juvenile sentencing is a rapidly evolving area, and I would say that Buffer really should inform this court's assessment of his sentence, which was almost a decade over the minimum. This is really a mid-range sentence, not really close to a minimum. That's really all I have to say. Thank you. I want to thank counsels for a well-argued matter. This court will take this under advisement, and as I indicated earlier, Justice Lampkin will also be participating in this position along with Justice Burke, and she will be listening to the arguments on the table. Thank you very much. Court is adjourned.